**Reversed and Remanded and Memorandum Opinion filed June 26, 2012.**



In The

## Fourteenth Court of Appeals

_____

### NO. 14-11-00428-CV
_____

### ANTHONY M. WOOD, Appellant

### V.

### PYRAMID COMMUNITY DEVELOPMENT CORPORATION, Appellee

**On Appeal from the 333rd Judicial District Court**
**Harris County, Texas**
**Trial Court Cause No. 2009-60612**

## MEMORANDUM OPINION

This is a summary judgment case. Because an issue of material fact remains, we reverse the trial court's judgment and remand for additional proceedings.

## BACKGROUND

Anthony M. Wood owns an air conditioning repair company. During the summer of 2004, he was called to inspect the heating and cooling units at the Power Center, a large business complex owned and operated by the Pyramid Community Development

Corporation. The units required minor electrical work, which Wood completed in August 2004. Shortly after his visit, Wood submitted a proposal to conduct more extensive repairs to the Power Center's air conditioning system. The proposal suggested that the air duct system on twenty-eight roof top units needed to be corrected. Wood submitted a bid for $99,400, parts and labor included, to complete the necessary repairs.

The Power Center accepted Wood's proposal by oral agreement, rather than by written contract. Pursuant to that agreement, Wood performed a number of significant repairs, which he documented in three invoices dated between September and October 2004. The invoices indicate that a wide array of services was provided, including services not expressly contemplated in the written proposal. Together with the minor electrical repairs that were previously done, the invoices reflect a total of $202,400.80 in charges.[1]

Before payment was made on any of these invoices, Wood prepared a second written proposal for the Power Center's consideration. Dated October 25, 2004, this proposal stated that repairs were required because of major weather damage the facility had

---

[1] The following table provides a digest of the invoices and their descriptions:

| Invoice # | Date | Description | Amount |
|---|---|---|---|
| 1142 | 8-30-04 | Replace UPC circuit board<br>Charge unit to level of cooling<br>Check circuit wiring<br>Total invoice | <br><br><br>$750.00 |
| 1160 | 9-14-04 | Two semi-hermetic compressors<br>Two 7.5 ton compressors<br>Crane service, 5 hours<br>Four laborers, 84 hours<br>Total invoice | $14,400.00<br>7,302.80<br>1,500.00<br>3,528.00<br>$26,730.80 |
| 1161 | 9-14-04 | Ninety pounds of R-22 Freon<br>Total invoice | $1,620.00<br>$1,620.00 |
| 1154 | 10-07-04 | Installation – Power Center return air system<br>Installation – WIC building return air system<br>Installation – Unit in administrative wing<br>Installation – Unit in the Power Suites<br>Installation – Unit in the Imani School (office)<br>Installation – Kitchen Trane unit fan motor<br>Total invoice | $99,400.00<br>17,550.00<br>14,500.00<br>14,500.00<br>26,500.00<br>850.00<br>$173,300.00 |

sustained "over the years." The proposal made no reference to Wood's previous invoices, nor did it acknowledge any of the work that Wood had recently completed. Instead, the proposal stated that drainage lines on the roof-top air conditioning units have failed, and that each unit's air duct system should be replaced. The second proposal provided estimates for the anticipated work, with reasons and specifications that largely mirrored those expressed in Wood's original proposal.[2] Unlike that earlier offer, however, an agent for the Power Center signed this second proposal. The contract price was accepted at $220,000, with payment to be made at "50% down . . . and balance upon completion of work."

In November 2004, not long after executing the written contract, Wood received a letter from Deborah Anderson, executive director of Pyramid's board of directors. In her letter, Anderson acknowledged installation of the air conditioning units, but she informed Wood that Pyramid would be unable to pay for the repairs in a single lump sum, as had been contemplated by the contract. Anderson represented that the agent who signed the contract on behalf of the Power Center did not have the authority to make such a large expenditure without the prior approval of Pyramid's board. Anderson assured Wood that

---

[2] In his second proposal, Wood submitted estimates for the following reasons:

> To correct the existing return air duct system on 17 roof top units.
>
> Each roof top unit will supply and return air to and from designated space.
>
> Each return air space will have a 24 x 24 filter grill for return air directly to the space roof top unit.
>
> Install drain lines for 28 Roof Top Units[.]
>
> To remove existing return air ducting and drain lines.

The original proposal was submitted for nearly identical reasons:

> To correct the existing return air duct system on 28 roof top units.
>
> Each roof top units [sic] will supply and return air to and from designated space.
>
> Each return air space will have a 24 x 24 filter grill for return air directly to the space roof top unit.
>
> This will stop the A/C units' compressors from failure and will cause each roof top unit to operate efficiently and less energy costing. [sic]

Pyramid would still pay for the services, but she proposed to do so over a span of twenty-four months, with 12.5% interest.

Pyramid submitted a claim to the Hartford Company, its insurance carrier, during the same time as Anderson's correspondence with Wood. In its claim, Pyramid asserted that its building had suffered water damage because of drainage from malfunctioning air conditioning units. Investigators from the insurance company later surveyed the property for damages. On January 5, 2005, a claims representative wrote a letter stating that all repairs had been made prior to his inspection and that Pyramid's coverage did not extend to this type of claim. The representative also stated that he relied on an "inspection and bid/report" from Wood when making his assessment.

On January 18, 2005, Wood sent a demand letter to Pyramid requesting payment on its outstanding account. Before this demand, Pyramid had remitted four installment payments totaling over $25,000. Wood sought immediate payment on the amount still remaining, which he claimed was $196,000. The demand prompted new discussions between the parties. By July 2005, when the balance was reportedly $103,884.80, the parties settled on a payoff agreement in which all interest would be waived if Pyramid delivered a series of payments according to the following schedule: three monthly payments of $25,000, each due on the sixteenth of the month beginning in July; and one final payment of $28,884.80. Pyramid timely made these scheduled payments, with its last payment remitted on October 11, 2005. By that date, Pyramid had remitted a total of $238,000.

In December 2005, after no payment had been received the previous month, Wood contacted Pyramid to discuss the account. According to Wood's affidavit, the account still carried an outstanding balance, and agents from Pyramid had ensured him that "they were working on getting me paid." Pyramid submitted no further payments, however, apparently believing that nothing more was owed to Wood.

4

Wood filed his original petition in September 2009, less than four years after Pyramid's final payment. In his live pleading, he asserted causes of action for breach of contract, suit on a sworn account, quantum meruit, and breach of guaranty. All of these causes stem from the same set of operative facts—Pyramid's alleged failure to pay for services rendered. Wood alleged that, altogether, these services cost a grand total of $440,400.80. He arrived at that figure by claiming that the repairs completed under the written contract were separate and distinct from the repairs performed under the original four invoices. Thus, Wood alleged that he was owed $202,400.80 for the services represented by the invoices; $220,000 for the services represented by the written contract; and $18,000 for other services performed later, services which are not in dispute in this appeal. After lawful offsets of $238,000, Wood claimed that Pyramid's account remained outstanding at $202,400.80—the same figure as the sum of the four invoices.

Pyramid filed a general denial, and both parties moved for summary judgment. Wood argued in his motion that he had established all elements of his causes of action as a matter of law. Pyramid responded with an affidavit from Anderson, who attested that the account had been paid in full, that the written contract was a memorialization of prior oral dealings, and that Wood was simply double-billing for the same services.[3] In its cross-motion for summary judgment, Pyramid asserted a statute of limitations defense. Pyramid argued that Wood's causes of action accrued no later than January 5, 2005, and that Wood's suit was untimely because it was filed more than four years from that date.

The trial court granted Pyramid's motion for summary judgment, explicitly citing the statute of limitations. Wood now appeals in two issues. In his first issue, he argues that

---

[3] The record includes a "Reconciliation of Payments" current through October 25, 2005. This document apparently served as an accounting of Pyramid's dealings with Wood. The accounting shows that on October 25, 2004, the same date as the written contract, Wood submitted an invoice for the installation of roof-top drains at a cost of $17,599.20. When combined with the four previous invoices, this cost reaches a total of $220,000, the same amount as the written contract. The accounting also mentions one final invoice dated January 6, 2005. The description for that invoice indicates that Wood replaced at least four roof-top units at the Power Center for a charge of $18,000. Altogether, the accounting shows $238,000 in charges.

the trial court erred by granting Pyramid's motion for summary judgment. In his second issue, he complains that the trial court should have rendered summary judgment in his favor.

## STANDARD OF REVIEW

We review a trial court's summary judgment de novo. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex. 2009) (per curiam); *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). To prevail on a traditional motion for summary judgment, the movant must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A defendant who moves for traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). Evidence is conclusive only if reasonable minds could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). Once the defendant establishes his right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). The nonmovant has no burden to respond to a traditional motion for summary judgment unless the movant conclusively establishes each element of his cause of action or defense as a matter of law. *Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex. 1999). When determining whether there is a genuine fact issue precluding summary judgment, all evidence favorable to the nonmovant is taken as true and all reasonable inferences are made in the nonmovant's favor. *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999).

**PYRAMID'S MOTION FOR SUMMARY JUDGMENT**

Pyramid moved for summary judgment on the basis of limitations.[4] For each of the causes of action asserted in Wood's live pleading, the statute of limitations is four years. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 16.004(a)(3), 16.051 (West 2011). Because the statute of limitations is an affirmative defense, Pyramid carried the burden of proving when each cause of action accrued. *See* Tex. R. Civ. P. 94; *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001); *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex. 1990).

The accrual date for a cause of action is normally a question of law for the court to decide. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990). A cause of action generally accrues when facts come into existence that authorize a claimant to seek a judicial remedy. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003).

Pyramid argues that Wood's breach of contract claim accrued no later than January 5, 2005. Pyramid arrives at this accrual date based on the terms of the written contract and the findings from the Hartford Company's claims representative. The contract, Pyramid observes, states that the balance of the account is due "upon completion of work." The insurance representative mailed a letter to Pyramid on January 5, 2005, stating that "the repairs were completed prior to our inspection." The letter also referenced the "inspection and bid/report" supplied by Wood's air conditioning company. Because the evidence

---

[4] Pyramid filed its "Defendant's Response to Plaintiff's Motion for Summary Judgment and Motion for Summary Judgment" on August 1, 2010. Many pages from that motion were omitted from the copy included in our clerk's record, including the motion's "Arguments and Authorities" section. We ordered the Harris County District Clerk to file a supplemental clerk's record containing a full version of the motion, but the District Clerk provided us with another incomplete duplicate. Neither Wood nor Pyramid has addressed this incompleteness. In resolving this appeal, we rely on a supplemental motion filed by Pyramid on November 23, 2010, entitled "Defendant's Supplemental Motion and Brief in Support of Defendant's Motion for Summary Judgment." The supplemental motion addresses only the statute of limitations defense as it relates to Wood's breach of contract cause of action. The argument within this supplemental motion is completely consistent with the argument advanced in Pyramid's briefing on the merits.

showed that the work was completed by January 5, 2005, Pyramid asserts that Wood was entitled to payment in full on that date, and that the cause of action accrued when payment was not made.

Pyramid's argument does not address any of the events that transpired after January 5, 2005. When those subsequent events are considered, the summary judgment evidence shows that the parties negotiated for revised payment plans well after Wood had completed his repairs. Pyramid initially proposed to pay for these repairs over twenty-four months, or by the end of 2006; later correspondence suggests that the parties agreed to close the account at an even earlier date, approximately by the end of 2005. Pyramid submitted twenty-three installment checks in furtherance of these various plans, twenty of which were mailed after January 5, 2005. Even if the contract strictly required that payment be due upon the completion of work, the evidence raises a fact issue whether a modification was made. To the extent Wood complained that additional payments were due after October 2005, his suit filed in September 2009 would have been timely and within the four-year statute of limitations. *See Gardner v. Cummings*, No. 14-04-01074-CV, 2006 WL 2403299, at *2 (Tex. App.—Houston [14th Dist.] Aug. 22, 2006, pet. denied) (mem. op.) ("Where an installment contract calls for fixed, periodic payments, a separate cause of action accrues for each missed payment.").

Construing the evidence in the light most favorable to Wood, we conclude that there were issues of fact on the breach of contract claim and that Pyramid was not entitled to summary judgment on its limitations defense.[5] Wood's first issue is sustained.

---

[5] Pyramid has not argued in its briefing that the statute of limitations barred Wood's causes of action for suit on a sworn account, quantum meruit, and breach of guaranty. Similarly, Wood has not briefed whether the trial court erred by granting Pyramid's motion on these three claims. Because Pyramid's supplemental motion contains an argument only on the breach of contract action and because the argument section of Pyramid's original motion is missing, *see supra* note 4, we are unable to review the trial court's judgment on Wood's remaining claims.

**WOOD'S MOTION FOR SUMMARY JUDGMENT**

In his second issue, Wood argues that the trial court should have granted his motion for summary judgment.

The record contains no ruling on Wood's motion. There is no signed denial of Wood's motion, and the order granting Pyramid's motion does not reflect that the trial court even considered Wood's motion. Based on this record, we cannot say that there was an implied denial. Without a ruling, express or implied, we decline this opportunity to address the merits of Wood's motion for summary judgment.

**ATTORNEY'S FEES**

Contending that Wood's appeal is frivolous, Pyramid moves for damages in the amount of $3,500 for attorney's fees.

If an appeal is frivolous, an appellate court may award the prevailing party just damages. Tex. R. App. P. 45. To determine if an appeal is frivolous, we review the record from the viewpoint of the advocate and decide whether there were reasonable grounds to believe the case could be reversed. *Glassman v. Goodfriend*, 347 S.W.3d 772, 782 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (en banc). Because we decide that the summary judgment should be reversed, we conclude that Wood's appeal was not frivolous, and we deny Pyramid's motion for damages. We do not express any opinion on the merits of Wood's underlying petition.

**CONCLUSION**

Pyramid's motion for damages is denied, the trial court's judgment is reversed, and the cause is remanded for additional proceedings.


/s/          Adele Hedges
                Chief Justice

Panel consists of Chief Justice Hedges and Justices Jamison and McCally.